your honor, in this case under document 2, uh 18-0134, Andy Davis comes to the appellant for the present plaintiffship individually and has just renewed the petitionship for the vote of the trust agreement at ad hoc defendants at the least. are you then on behalf of the plaintiff appellant? Mr. Steven and Sheba? I am Are you then on behalf of defendants at least? Mr. Johnathan Schultz? Mr. Sheba? yes you may proceed your honor, there is one house deed that defendants had asked that I allow the court to have the originals of three exhibits and because signatures and handwriting and ink are at issue, I've been maintaining custody of these so they weren't filed into the record, so very well, thank you you're going to file them with the clerk? is that best? yes okay, I'll do that thank you good morning, your honors, my name is Steven Sheba, I represent the appellant, Ms. Ann Davis may it please the court, our position is this the document that defendants claim is the operative life insurance trust cannot be a photocopy of a document that was fully executed as your honors know by now, this is a case about a trust with a draft date of May 15th, 2002 on it that evidence showed was actually sent to the grantor on May 30th of 2002 but according to the trustee's testimony about how it was signed, the signing took place in early May and what's more, the notary attested to the date of April 22nd so there is a lot to question about what is the genesis, lineage, how did this document come into being well, when you refer to the notary, you're referring to the declaration or certification on the document yes the record I don't think reflects that the notary ever testified or was deposed correct so the only evidence that would be available regarding a notarial seal would indicate that it was signed on the April date that is true except we have the testimony of Mr. Sheck who was by his testimony present at the signing said that it certainly wasn't signed on the 22nd and that the notary was there and that he actually said it was her idea to notarize it to backdate the notary date so the evidence that we have is the defendant's own testimony and when was the document signed according to Mr. Sheck? sometime in early May he didn't have a date okay, thank you so well regardless of whether it is April 22nd or early May of 2002 it does appear that it was in 2002 and not in 2003, correct? that's hard to know, your honor well your guy says it was, right? I mean, I'm sorry, the defendant says it was, correct? yes, the defendant says it was the other evidence relating to the time of signature is also somewhat shaky well does your client have a date? does she pinpoint a date and says it was created on this date? my client wasn't in attendance, the grantor has passed away okay, I meant Ann Davis she doesn't have knowledge of that, no okay okay, the so the circuit court obviously granted the defendant's motion for a directed finding and the judge dictated her ruling from the bench and the way the court is supposed to analyze that at this point is there's a two-step process first stage being determining whether there was some evidence of each element of plaintiff's primary patient case and that's a ruling that's made as a matter of law and subjected to no vote review if the court finds that in fact there was evidence of each element then the court goes and weighs the evidence as to whether the primary patient case has been negated and that step is reviewed by the appellate court under the manifest weighing the evidence statement so it's difficult to tell from the circuit court's ruling how this analysis was followed or if it was there is a statement in the middle of the ruling where the court says I believe that as a matter of law all the requirements for an irrevocable life insurance trust were contained in that document signed by Patricia and signed by Kevin and notarized by Joan Courtright that being a finding as a matter of law this court should review that de novo and in order to uphold that finding the court would have to find that that we, the plaintiff, as a matter of law has failed to make our primary patient case for the Bierman Trust even though we have all of this evidence that seems to invalidate or at least completely question the signing of the trust that defendants are offering you mentioned in your statement of facts any reference to the Bierman document or attorney who made reference to the fact that she had seen the signed copies before she ever executed or had the the trust agreement that your client had prepared or I shouldn't say your client had prepared subsequently can we have that answer regarding that signing I don't recall you stating in your statement of facts any reference to the fact that the attorney for Bierman whatever the name is that there was reference that she saw the prior trust in its executed form before she prepared the second trust that is correct why isn't that fact in your statement of facts or maybe I'm wrong but I don't think it's there your honor I may not have put that in there I don't know that it was I need to respond to the issues they raised about Ms. Dion and I would like to do that I'd like an opportunity to do that but no it's not in my statement of facts but I think it's something that helps them and I don't see it as relevant because her testimony was very very scattered and if I may just explain it's important because the court and the defendants really rely entirely for their validation of their trust they rely entirely on the fact that Ms. Dion from Bierman supposedly wrote in handwriting on a photocopied trust and they say it's physically impossible for it not to have been signed before that time several things though first Ms. Dion testified that it was early 2003 when she got the trust draft and hand wrote the names on it in new ink but then when she was shown notes relating to Patricia's estate planning she agreed that it seemed right that she actually didn't know the names of the amenders to write there in ink until mid June 2003 at the earliest and she could not recall the circumstances under which she wrote these names on the document so my point is I don't believe that we can assume that what Ms. Dion had in front of her necessarily was a defendants eyelid we don't know what document that was the problem here is we have a photocopied signature page that same photocopy appears on plaintiff's exhibit 6 which we all agree is not the trust so you have a photocopied signature page that can be appended to one document or another and it happens in this case that our expert testified that the first 10 pages of defendants eyelid are first generation prints but that the last page is a signature page we also have Kevin in his deposition saying with no uncertainty that he has the original still in his files well that turned out not to be true and that would obviously have been critical evidence so he was unable to produce it for trial and the tables turned in this case did they not? how so? Mr. Sheck was a favorite son and the first document that was prepared was supposed to equalize based upon distribution and so the document that was being prepared in 2002 was actually being prepared to favor your client and in 2002 in 2003 had he become an unfavored son? no so as of 2003 there would be no motive to actually come up with this particular draft at least based upon the dynamics of the relationship between the parties that's correct your honor so at least at the time the the first trust when the Bierman lawyers saw it would have been against Mr. Sheck's interests because it would have given Ms. Davis more money that's only if we accept that and I submit it's not been proved that that's the time frame in which Ms. DeYoung wrote those amenders names in there that has not been established we don't know when that happened she was very uncertain of the circumstances as long as your honor mentions it it's maybe a coincidence maybe not nothing is a coincidence everything is divine intervention you're correct that the original Huck Boma formula favored Ann because the sons were to get the 49% interest in the company so Patricia was concerned that Ann and her brother weren't going to be taken care of well enough well then actually the Bierman trust Kevin has every motivation to sign that trust because thinking that he's going to get stocked that's a three way split so he doesn't have to equalize so Kevin has every motivation to sign and have fully executed our exhibit one which is the Bierman trust and indeed he has used that for all purposes he submitted that trust to Lincoln Financial with applications signing applications verifying that the attached is the trust and it was the Bierman trust he sent it to Mr. Reynolds and then although he did send both to Mr. Reynolds Kevin denied I think it's seven times we identified he denied that he sent the trust to Mr. Reynolds who was the agent of Lincoln and gave them for various processing that they were doing of the trust so it's not my point is so Kevin definitely benefits and for years treats the Bierman trust as though that's the valid trust then he becomes in about 2008 the unfavored son and at that point the Huck-Boa trust is now the best thing for him because with Ann getting all of the estate and the 49% he is better served if there is an equalization so then we wind up with the Huck-Boa trust no original and that's where we are today my last point would be that this presumption that defendants claim that should apply presumption of validity to the document because there is a notary I think that it would be just wrong and impossible to claim in this circumstance where by Kevin's testimony we have five people in the room on a date that is certainly not April 22nd likely as early as May according to Kevin of that year while a notary supposedly sits there and falsely attests to the date of April 22nd on a draft that is dated May 15, 2002 and nobody says anything or asks any questions and according to Kevin it's the notary's idea to do this he says we have to ask her why she did it so we submit this scenario it's not credible as a matter of law and it's somewhat astounding that defendants seek to have a presumption of validity arise from these circumstances did you have access to the notary? no I did not we had a declaration from her but I had no access to her was she able to be located? could you have subpoenaed her? I don't know if she was still in Illinois because I didn't check but it's possible that she could have been subpoenaed but frankly I didn't think that it was my burden the facts were evident from the testimony and I didn't think I had a burden to find the notary is there anything that pens below? sorry? is there anything that pens below? yes the accounting phase of this litigation where we determine assuming as the court ruled that there's this equalization there's the accounting and figuring out how that gets divided and paid so you had two clauses of action one a declaratory and the other an accounting? maybe three I think there was an injunction the accounting was not dependent on the declaratory except to the extent as to which of the two documents must be used because the accounting related to account on whichever document was supposed to be validated and that's the reason why you claim we have jurisdiction? yes you will have an opportunity thank you Ms. Schwartz may it please the court I'm Judge Schwartz I represent the sharp defendant the narrow issue before the circuit before we get started do you know where the notary is? we do not know where the notary is we were actually the ones that secured a declaration from her and we lost track of the notary so we do not the narrow issue before the circuit court was whether the Huck-Boma Islet or the Behrman Islet owned the life insurance policy on Pat's wife the circuit court properly found the Huck-Boma Islet controlled the primary arguments that plaintiff raises on appeal fail for two reasons first, the circuit court's factual finding that the Huck-Boma Islet was Pat's first fully executed islet is supported by ample evidence in the record and second, plaintiff's theory that the Huck-Boma Islet is a fabricated document simply was not supported by any evidence at trial and in fact was negated by the evidence that was presented now to my first point there is ample evidence in the record to support the circuit court's factual finding that the Huck-Boma Islet was first in time and as your honor has pointed out first of all is Lauren DeYoung's testimony which is completely ignored by the appellant's brief Ms. DeYoung was Pat's attorney at Behrman and provided estate planning services to her beginning in 2003 Ms. DeYoung testified that Pat provided Behrman with her then existing estate planning documents and Ms. DeYoung reviewed those documents and took notes contemporaneously with her review in early 2003 those notes provide clear and credible evidence that what Ms. DeYoung saw a fully executed islet as well as that the islet that she saw was the Huck-Boma Islet that was presented at trial Ms. DeYoung's notes which she also testified about at trial has Patricia Sheck's name on the first page this is defendant's exhibit 28 by the way in the record at the top of the second page is the underlined heading irrevocable trust and then it states in parenthesis has been signed underneath that heading are bullet points about the trust it states there is a blank line in the paragraph regarding the right to withdraw and income and distribution there is a bullet point that says the trust directs the trustee to even out the distribution to the children if necessary and there is a bullet point that states the names of a third party allowed to amend the document were left blank now these notes match the Huck-Boma Islet exactly the Huck-Boma Islet is an irrevocable trust it has a blank line in the paragraph regarding income and distribution and rights of withdrawal it has an equalization provision and it has a provision for a third party allowed to amend the document that provision has two lines that were blank before Ms. DeYoung filled them in during the representation of PACT now not only does Ms. DeYoung's notes and her testimony about those notes match the Huck-Boma Islet exactly but the document that was admitted at trial and that Mr. Shebar is presenting to the court this morning has original handwriting on page 11 Ms. DeYoung testified that handwriting was hers and that she made that handwriting while she represented PACT in 2003 she stated that she believed it was early 2003 but certainly no later than June 2003 which is undisputably before the Berman Islet is signed now Mr. Shebar and we would like this court it sounds like to make a credibility finding about Lauren DeYoung and find that her testimony was not credible but the circuit court was in the best position to make that determination it found that Lauren DeYoung's testimony was credible and established the Huck-Boma Islet was first in time and that determination is not against the manifest way to the evidence Ms. DeYoung's notes authenticated and testimony authenticated the Huck-Boma Islet and established that the islet predated the Berman Islet but Ms. DeYoung's testimony is not the only evidence that established this the irrefutable insurance and financial documents which are also ignored in the appellant's brief show that Pat as the settler and Kevin as trustee of Pat's Islet took actions in the spring of 2002 to have Pat's Islet apply for, obtain and fund the life insurance policy on April 22, 2002 that's when the application for the policy is submitted it's signed by Pat as the settler as the proposed insured and it's signed in his capacity as trustee the application identifies Pat's Islet dated 4-22-02 with Kevin as trustee as the proposed owner and beneficiary on May 6, 2002, the insurance company issues the policy pursuant to the application I'm sorry, what was the date? May 6, 2002 the policy identifies Kevin as trustee of Pat's Islet dated 4-22-02 as the owner and beneficiary of the policy on May 13, 2002, Pat and Kevin sign a receipt for the policy as well as an insurance form that confirms the beneficiary is as specified in the policy which is Kevin as trustee of Pat's Islet dated 4-22-02 in April of 2002 Pat's financial advisor opens an investment account specifically in the name of Kevin as trustee of Pat's Islet dated 4-22-02 on or before May 10, 2002 Pat authorizes transferring funds into that account to pay the policy's first premium did anybody subpoena the insurance company for a copy of the draft? I gather what you said was they examined the trust document or at least they had custody of it whether they looked at it or not it's not clear whether the insurance company received a copy of the trust at that time the agent for the policy who submitted the documents to the insurance company I believe her testimony was she was not sure whether she admitted the trust at that time but what is certainly clear is the insurance company acted as though and proceeded in a manner assuming the trust was in place not only at the time by issuing the policy to the trust but by paying the policy proceeds out to the trustee once for the death benefit so it's certainly clear that the insurance company has at all times acted as though the trust was in place and the contract was valid did the insurance company file an interpleader at any time? it did not the insurance company has never contested the validity of the contract it has never contested that the trust was in place and in fact at this point the contract for insurance has been fully performed the proceeds have been paid out to the trustee now all of this activity related to insurance happens in the spring of 2002 when there is no dispute that Huck Boma was the only law firm representing Pat at that time there's no dispute that Pat met with Huck Boma at that time about creating her islet there's no dispute that Huck Boma in fact created an islet for Pat at that time and there's no dispute that the Behrman Islet doesn't even come into existence until nearly one year later one year after the policy is in existence the party's conduct corroborates Ms. DeYoung's testimony and supports the circuit court's finding as to which islet was first now as to my second point plaintiffs' theory that the Huck Boma islet is a fabricated document simply wasn't supported at trial there was no evidence plaintiffs didn't present any evidence from her expert or otherwise that the signatures on the Huck Boma islet are forged, transferred from another document or fraudulent in any manner and in fact her expert gave testimony that indicated the signatures of Pat and Kevin were authentic she really relies on a very limited opinion given by her expert that pages one through ten of the document appear to be printed and that page eleven appears to be a photocopy of a signature page with original handwriting the circuit court recognized that testimony and rejected that it was evidence of fraud as fact finding the circuit court was entitled to do so but considering the totality of the evidence there was no it was reasonable to find that the Huck Boma islet was not a fabricated document first, Ms. DeYoung's notes and testimony established, authenticated the Huck Boma islet and as her notes described portions of pages one through ten of the document as well as portions of page eleven her testimony established that all the pages went together as a complete document and we have her original handwriting on page eleven additionally, page eleven of the Huck Boma islet is not just the signatures, it also contains substantive terms of the trust those terms follow directly and coherently from the first ten pages of the document there was certainly no evidence presented that the signature page of the Huck Boma islet came from another document that contained different substantive terms than the Huck Boma islet did you say earlier that the settlor the mother gave the Behrman attorney the trust document that had the photocopied signature page yes, that was Ms. DeYoung's testimony that Pat provided Behrman with her estate plan documents we also have testimony from another one of Pat's attorneys Audrey Skiera, who was an attorney at Huck Boma in 2009 also testifies that Pat comes with a box of her estate plan documents in 2009, so seven years after all this happens and she pulls out of the box not just the Behrman islet, she also pulls out of the box the Huck Boma islet so we have testimony from two of Pat's attorneys that she has possession of this document from 2002 all the way through 2009 and the evidence also showed that all three law firms that represented Pat from 2002 through 2009 had an exact copy of the Huck Boma islet in their files the third law firm would be? Richard Lucas, I believe it's Lucas and Apostolous I'm going to ruin the last name, but it's Richard Lucas' law firm and just briefly I'd like to also touch on Mr. Shebar has indicated, has talked today about that there was only one draft of the Huck Boma islet given to Pat on May 30, 2002 there is no confident testimony to establish that fact the relationship partner at Huck Boma who represented Pat Ralph Boma testified that he had no idea how many drafts Huck Boma produced when they were given to Pat and certainly didn't foreclose the possibility that a draft was given to Pat before May 30, 2002 and as to the date on the Huck Boma islet Mr. Ralph Boma explained why that April 22, 2000 date was used he said it was his typical practice to date a trust as of the date the client had committed to the concept of an islet in the salient terms that's why that's the date of the trust, that's why that's the date the policy is applied for and that's why that's the date that is typewritten into the notary certificate in the trust document not the date that's handwritten, it's the date that's typewritten into the notary certificate the record is replete with evidence that Pat and Kevin intended to enter into the Huck Boma islet in the spring of 2002 for these reasons and for the reasons stated in our brief we'd ask that this court affirm the circuit court's judgment thank you one question, when you say that that's the type date that is inserted into the notary's attestation not the handwritten date, was there a handwritten date in any document? there was not there was not thank you there are other facts here that make pretty clear that Pat did not actually follow through and sign this trust one is it's on page 7 of our brief plaintiff's exhibit 9 which is a written phone message for Ralph Boma from his assistant which stated that she, Maria and Ms. Potasek who is the associate who drafted our exhibit 7 which is the actual Huck Boma trust they discovered that the trust was never signed trust was never signed by Potasek and there were blanks in the trust and the date on the message is what? is February 14, 2003 Maria then called Patricia and Patricia wanted her to fax a draft of the Huck Boma trust to her which was wholly inconsistent with her having already executed the Huck Boma trust and Ms. Potasek also recalled that they searched the client binders and they were looking for the Huck Boma islet and they did not find one I think the other thing that was mentioned is a trust being provided to the insurance company I believe Ms. Ola's Pam Ola's testimony was she never got one a year later it was by 2003 she still hadn't received a copy and I don't believe there's any evidence that any trust other than the Bierman trust was ever sent to Lincoln this idea that a draft could have been given to Pat before May 30th in 2009 when Patricia died where did the insurance company send the money? which trust? neither, it wasn't sent  it was put into an account an escrow fund of some sort? I don't know if you call it an escrow an account that was monitored by Ice Miller which is the trustee's attorney so nothing could be gleaned from where the money went as to which trust controls well the trustee was the same in both wasn't it? the trustee was the same the idea that Ralph Romo would have written a letter on May 30th urging Pat to follow up so we can finalize this draft trust that he was working on it just defies credulity isn't that a factual determination for the trial court? there was a lot of not only conflicting evidence here just absolute opposites and isn't it the trial judge's prerogative to weigh the credibility of the evidence and make a determination and as you're playing standing alone there is that enough to overturn Manifest 20? but when the trial court is obliged to consider all of the evidence yes and my point is I understand that deference needs to be shown for factual determinations and that's the standard but in this case the testimony of the one person with factual knowledge of the signing of this document his testimony is so impossible that no reasonable person could credit it and it should be discounted I don't understand your statement the only one who could possibly know whether it was sent yes the only person around alive now, there's two people who actually claim to have witnessed the signing of defendant's trust that's Kevin and his brother Timothy they're the only two that say yeah this is a copy of something we signed and his testimony I just explained some of it I thought you meant Mr. Bomo no I'm talking my point about Mr. Bomo was why would he have written a letter on May 30th that was so obviously requiring a response before finalizing the draft we need to talk about this so we can finalize the draft why would he do that if one had been sent in early May slightly different than the one that Mr. Boma attached so something is going on here and I believe that we have established enough to put the burden back on the defendants to answer some of these questions thank you there's another case in the call there will be a short recess